**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| EZELL GLOVER,<br><br>Petitioner,<br><br>v.<br><br>RYAN WALTERS, WARDEN,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-CV-00137-JRA<br><br>JUDGE JOHN R. ADAMS<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT & RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Ezell Glover ("Mr. Glover"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Glover is currently serving a sentence with a maximum release date of August 6, 2048 after his parole was revoked in 2019.

Mr. Glover asserts two grounds for relief. Respondent, Warden Ryan Walters ("Warden"), filed an answer/return of writ on May 22, 2026. (ECF No. 7). Mr. Glover filed a traverse on June 12, 2026. (ECF No. 9). This matter was referred to me on March 24, 2026 under Local Rule 72.2 to prepare a report and recommendation on Mr. Glover's petition. (*See* ECF non-document entry dated March 24, 2026). For the reasons set forth below, I recommend that Mr. Glover's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Glover a certificate of appealability.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Fifth Appellate District summarized the facts as follows:

> {¶2} We present the facts as set forth in Mr. Glover's petition. Mr. Glover was convicted of robbery, grand theft auto, and theft in 1983 and was subsequently released from the custody of the Ohio Department of Rehabilitation and Correction and placed on parole. (Petition at ¶ 8) Mr. Glover alleges the exact conditions of his parole are unknown because the Ohio Department of Rehabilitation and Correction is unable to locate many of the records associated with his release. (Id. at ¶ 10)

(ECF No. 7-1, Exhibit 13); *State ex rel. Glover v. May*, No. 2020 CA 0028, 2020 WL 3263246, 2020-Ohio-3353 (5th Dist. June 17, 2020).

## III. PROCEDURAL HISTORY

### A. 1980 State Court Plea

On May 30, 1980, Mr. Glover was bound over to be tried as an adult in the Summit County Court of Common Pleas on one fourth-degree felony charge of grand theft in violation of O.R.C. § 2913.02. (ECF No. 7-1, Exhibit 1). On July 2, 1980, Mr. Glover pled guilty to one count of grand theft and one count of burglary in case number CR-80-5-731. (ECF No. 7-1, Exhibit 2). On August 15, 1980, the trial court sentenced Mr. Glover to an aggregate term of two to fifteen years in prison. *Id.* According to records from the State of Ohio's Bureau of Sentence Computation, Mr. Glover was paroled on August 3, 1981. (ECF No. 7-1, Exhibit 3).

### B. 1983 State Court Plea

During the January 1983 grand jury term, Mr. Glover was indicted in the Summit County Court of Common Pleas in case number CR 83-4-138 on: (1) one count of aggravated robbery in violation of O.R.C. § 2913.02; (2) one count of felonious assault in violation of

O.R.C. § 2903.11(A)(2); (3) one count of grand theft auto in violation of O.R.C. §§ 2913.02(A)(1) and 4501.01; and (4) one count of theft in violation of O.R.C. § 2913.02(A)(1). (ECF No. 4). On May 24, 1983, Mr. Glover pled guilty to one lesser-included count of robbery, one count of grand theft auto, and one count of theft. (ECF No. 5). On the same day, the trial court sentenced Mr. Glover to an aggregate term of nine to thirty years in prison. *Id*. According to records from the Bureau of Sentence Computation, because Mr. Glover was still on parole from his sentence in case number CR 80-5-731, his sentence in case number CR 83-4-138 ran consecutively to that sentence, for an aggregate sentence of 11 to 45 years. (ECF No. 7-1, Exhibit 3).

**C. <u>1994 Parole</u>**

On July 13, 1994, Mr. Glover was released on parole. (ECF No. 7-1, Exhibit 3). On July 28, 1994, Mr. Glover was declared a parole violator at large. *Id*. On November 5, 1994, the Ohio Department of Rehabilitation and Correction authorized Mr. Glover's return to the Lorain Correctional Institution. *Id*. An additional two months and eighteen days were added to Mr. Glover's maximum sentence. *Id*.

**D. <u>1995 Parole and Detention in Georgia</u>**

On September 12, 1994, a warrant was issued for Mr. Glover in Clayton County, Georgia on a charge of theft by taking. (ECF No. 7-1, Exhibit 9, PageID # 186). On February 3, 1995, a detainer was placed on Mr. Glover in connection with the charge. *Id*. at PageID # 185. On the same day, the Ohio Adult Parole Authority voted to release Mr. Glover on parole to the detainer on April 5, 1995. *Id*. at PageID # 187.

On April 4, 1995, Mr. Glover was released on parole to the custody of the Clayton County Sheriff. *Id*. at PageID # 191. Mr. Glover was instructed that, immediately upon release from custody in Georgia, he was to report to his parole officer in Dayton, Ohio. *Id*. at PageID

# 192. On April 6, 1995, the Ohio Department of Rehabilitation and Correction asked the Clayton County Sheriff to notify the Ohio Adult Parole Authority at least 60 days before Mr. Glover was released from custody in Georgia. *Id*. at PageID # 193. On January 27, 1996, Mr. Glover was declared a parole violator at large. (ECF No. 7-1, Exhibit 3).

**E. <u>Parole Revocation Proceedings</u>**

On November 27, 2006, the Georgia Department of Corrections acknowledged the State of Ohio's request for a detainer. (ECF No. 7-1, Exhibit 9, PageID # 194). On March 15, 2019, the Ohio Adult Parole Authority issued an Order of Hold instructing the Lorain Correctional Institution to hold Mr. Glover in custody. *Id*. at PageID # 195.

On April 10, 2019, the Ohio Adult Parole Authority held a parole violation hearing. *Id*. at PageID # 196-97. Mr. Glover admitted that he was convicted of several offenses in Georgia, and the Ohio Adult Parole Authority found that Mr. Glover was in violation of the terms of his parole. *Id*. The Ohio Parole Board revoked Mr. Glover's parole and ordered him returned to the appropriate state correctional institution. *Id*. at PageID # 198.

Mr. Glover is currently incarcerated at the Lima Correctional Institution. His maximum sentence is set to expire on August 6, 2048. (ECF No. 7-1, Exhibit 3). According to the Bureau of Sentence Computation, Mr. Glover's next parole hearing is scheduled for November of 2027. *Id*.

**F. <u>State Court Habeas Petitions</u>**

On February 3, 2020, Mr. Glover, through counsel, filed a petition for a writ of habeas corpus in the Fifth Appellate District. (ECF No. 7-1, Exhibit 6). In his petition, Mr. Glover asserted that he was unlawfully detained because the Ohio Adult Parole Authority failed to issue a timely detainer or make a timely determination that he violated his parole and because the Adult Parole Authority did not give him sentence credit for the time that he was in

Georgia. On February 14, 2020, the Fifth Appellate District dismissed Mr. Glover's petition because he failed to include copies of all commitment orders, as required under O.R.C. § 2725.04(D). (ECF No. 7-1, Exhibit 7).

On March 2, 2020, Mr. Glover filed a second habeas petition in the Fifth Appellate District, raising the same claims. (ECF No. 7-1, Exhibit 8). On June 17, 2020, the Fifth Appellate District dismissed Mr. Glover's petition. (ECF No. 7-1, Exhibit 13). The court held that the State did not deprive Mr. Glover of his due process rights by failing to issue a detainer prior to 2006 and that the State conducted Mr. Glover's parole revocation hearing within a reasonable amount of time. The Fifth Appellate District further held that Mr. Glover was not entitled to sentence credit for the time he was in Georgia. Mr. Glover did not appeal the Fifth Appellate District's decision to the Ohio Supreme Court.

### G. Motion for Judicial Release

On May 9, 2024, Mr. Glover, through counsel, filed a motion for judicial release in both cases in the trial court pursuant to O.R.C. § 2929.20. (ECF No. 7-1, Exhibit 14). On May 10, 2024, the trial court denied Mr. Glover's motion. (ECF No. 7-1, Exhibits 15-16). Mr. Glover did not appeal the trial court's decision.

### H. Federal Habeas Action

On January 6, 2026, Mr. Glover, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Glover's habeas petition raises two grounds for relief:

1. Violation of the 1st [*sic*] Amendment to equal protection under the law; violation of the 14th Amendment to due process of law.
2. The Ohio Parole Board failed to provide Plaintiff a timely revocation hearing and wrongfully added 8,000 days to the sentence.

*Id*. The Warden filed an answer/return of writ on May 22, 2026. (ECF No. 7). Mr. Glover filed a traverse on June 12, 2026. (ECF No. 9).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Summit County Court of Common Pleas sentenced Mr. Glover, and the Court takes judicial notice that Summit County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Glover's § 2254 petition.

### B. Exhaustion and Procedural Default

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is

clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C. Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further."

*Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

**V. ANALYSIS**

**A. <u>Statute of Limitations</u>**

The Warden first argues that the Court should dismiss Mr. Glover's petition in its entirety because his claims are time-barred. I agree.

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> 28 U.S.C. § 2244(d)(1).

"[A] parole revocation becomes final when a hearing officer for the Ohio Adult Parole Authority determines that that the defendant violated the conditions of his release and,

therefore, the revocation sanction should be imposed." *Klopp v. Wolfe*, 8 F. App'x 444, 446 (6th Cir. 2001). Here, the Adult Parole Authority formally revoked Mr. Glover's parole on April 10, 2019. (ECF No. 7-1, Exhibit 9, PageID # 198). Mr. Glover has not argued that he could not have discovered the factual predicate of his claim with due diligence on that date or that a later start date applies. Mr. Glover thus had one year from April 10, 2019, or until April 10, 2020, to file his habeas petition. However, Mr. Glover did not file his petition until January 6, 2026, more than six years later. (ECF No. 1). His petition is therefore untimely unless some form of tolling applies.

***1. Statutory Tolling***

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application for state post-conviction or other collateral review is pending. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).

Mr. Glover filed a petition for a writ of habeas corpus in the Fifth Appellate District on February 3, 2020, 299 days into the statute of limitations period. (ECF No. 7-1, Exhibit 6). However, "[o]nly 'properly filed' state court motions toll AEDPA's statute of limitations" under § 2244(d)(2). *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis omitted). Mr. Glover's first state court habeas

petition likely did not toll the AEDPA statute of limitations because the Fifth Appellate District dismissed it after Mr. Glover failed to attach all of his commitment orders. (ECF No. 7-1, Exhibit 7). Out of an abundance of caution, however, I will assume that the statute of limitations was tolled between February 3, 2020, when Mr. Glover filed his first petition, and February 17, 2020, when the Fifth Appellate District dismissed it. Mr. Glover therefore had 66 days remaining on the statute of limitations clock as of February 17, 2020,

Mr. Glover filed his second petition on March 2, 2020, 14 days later. (ECF No. 7-1, Exhibit 8). On June 17, 2020, the Fifth Appellate District dismissed the petition, holding that Mr. Glover's claims were without merit. (ECF No. 7-1, Exhibit 13). Under Ohio Supreme Court Rule of Practice 7.01(A)(1)(a), Mr. Glover had 45 days, or until August 1, 2020, to file an appeal to the Ohio Supreme Court. Mr. Glover did not file a notice of appeal by that date, and so the statute of limitations resumed running the next day. Mr. Glover had 52 days remaining, or until September 22, 2020, to file his habeas petition. Mr. Glover did not file his petition until more than five years later.

Mr. Glover also filed a motion for judicial release on May 9, 2024. (ECF No. 7-1, Exhibit 14). However, statutory tolling under § 2244(d)(2) "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quotation omitted). Here, the statute of limitations expired several years before Mr. Glover filed his motion for judicial release, and he cannot rely on statutory tolling to save his claims.

### 2. *Equitable Tolling*

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show

that: (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Keeling*, 673 F.3d at 462. "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling*, 673 F.3d at 462 (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

While Mr. Glover does not address the Warden's statute of limitations argument in his traverse, he does allege in his petition that he did not file his petition sooner because of state-created impediments. In particular, he argues that the state transferred him between multiple institutions for medical reasons and that the Allen Correctional Institution law library was closed for at least a year for remodeling. (ECF No. 1, PageID # 15). However, Mr. Glover had not provided any detail regarding those transfers or his inability to access the prison library, nor has he explained why those issues caused a five-year delay in him filing his petition or why they warrant equitable tolling. *See Schee v. Clipper*, No. 3:20-cv-02719, 2024 WL 4262134, at *2 (N.D. Ohio Sept. 23, 2024) (noting that general allegations regarding lack of access to legal materials are insufficient to warrant equitable tolling where the petitioner fails to explain why those circumstances prevent timely filing); *Lewis v. Ohio*, No. 1:23-CV-02252-BYP, 2024 WL 5514820, at *11 (N.D. Ohio July 19, 2024), *report and recommendation adopted sub nom.*, 2025 WL 942779 (N.D. Ohio Mar. 28, 2025) ("courts within this Circuit have found a petitioner's pro se status, lack of legal training, poor education, and/or limited law-library access, standing alone, are . . . insufficient" to warrant equitable tolling).

Mr. Glover has not shown that he is entitled to equitable tolling, and I recommend

that the Court dismiss the petition in its entirety because his claims are time-barred. Out of an abundance of caution, however, I will also consider the parties' remaining arguments.

**B. Procedural Default**

The Warden next argues that the Court should dismiss Mr. Glover's petition in its entirety because he failed to present his claims at all levels of the state court review process while state court avenues remained open to him. The Warden's argument is well-taken.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not fairly presented to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)) (cleaned up). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id.* at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

The Warden concedes that Mr. Glover presented his claims to the Fifth Appellate District in his state court petition for a writ of habeas corpus. After the Fifth Appellate District dismissed Mr. Glover's petition, however, he failed to file an appeal to the Ohio Supreme Court and therefore did not fairly present his claims at all levels at the state court review process. *Nian*, 994 F.3d at 751-52; *Morris v. Watson*, No. 3:24-cv-02118-JRK, 2026 WL 63115, at *6 (N.D. Ohio Jan. 8, 2026), *report and recommendation adopted*, 2026 WL 1476496 (N.D. Ohio May 27, 2026) ("Because [petitioner] failed to pursue his appeal to the Ohio Supreme Court, [he] has procedurally defaulted his claims.") And, because a defendant may not seek leave to take a delayed appeal to the Ohio Supreme Court with respect to a post-conviction petition, *see* Ohio S. Ct. Prac. R. 7.01(A)(4)(c), Mr. Glover no longer has an available avenue to do so. He has therefore procedurally defaulted on his claims. *See Alley v.*

*Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

Mr. Glover's procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Glover did not respond to the Warden's procedural default argument in his traverse. In his petition, however, he alleges that he failed to exhaust his claims because he could not afford a lawyer, could not find one to take his case pro bono, and did not have access to the prison law library. But "[n]either a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome a procedural default." *Cherry v. Frederick*, No. 5:23-cv-01164-CEF, 2025 WL 896325, at *5 (N.D. Ohio Mar. 24, 2025), *report and recommendation adopted*, 2025 WL 1637669 (N.D. Ohio June 10, 2025) (citing *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)). Mr. Glover further assets that he was in medical conveyance for several months, but has provided no details regarding the timing of his medical stay or how it prevented him from taking a timely appeal to the Ohio Supreme Court. Accordingly, I alternatively recommend that the Court dismiss Mr. Glover's claims as procedurally defaulted.

## C. Merits

### *1. Delay in Issuing Detainer*

In his first ground for relief, Mr. Glover asserts that his equal protection and due process rights were violated because the State did not issue a detainer against him when he was extradited to Georgia. The nature of Mr. Glover's claim is not entirely clear from his petition. In his state court habeas petition, however, he argued that the State violated his due

process rights by failing to timely issue a warrant for his arrest arising out of his parole violation. (ECF No. 7-1, Exhibit 8). That argument appears to map onto Mr. Glover's first ground for relief, and I will assume that he is making the same argument here.

The Fifth Appellate District addressed Mr. Glover's argument on the merits when it dismissed his habeas petition, holding as follows:

> {¶15} With regard to the timelines of the issuance of the detainer, Mr. Glover contends the OAPA waited over two years after his conviction in 2004, in Georgia, to notify him that he was being charged with a parole violation and a detainer was not issued to Georgia until 2006. (*Id*. at 31) Mr. Glover claims this amounted to a due process violation because he was left in a state of uncertainty not knowing what his future may hold. (*Id*. at ¶¶ 31, 32) Mr. Glover concludes that if the OAPA was going to act on some authority/detainer, it should have done so in 1997, upon his first release from Georgia's custody, not in 2006 when it issued the detainer to Georgia officials. (Memo. Opp. to MSJ at p. 11)
>
> {¶16} Petitioner made a similar argument in *Cline v. Haskins*, 175 Ohio St. 480, 196 N.E.2d 440 (1964), where petitioner challenged a delay in the issuance of a detainer. In *Cline*, during the years between 1950 and 1960, petitioner was incarcerated once in Florida and twice in Tennessee. *Id*. at 440-441. During this ten-year time period, the state of Ohio placed no detainers on petitioner when he was incarcerated and undertook no efforts to return him to Ohio. *Id*. at 441. In 1960, petitioner returned to Cincinnati and was subsequently recognized as the person who escaped from the workhouse in 1950. *Id*. He was tried and sentenced for escape. *Id*. In 1962, petitioner was released from confinement, but held for the parole officer and returned to prison in 1962. *Id*.
>
> {¶17} As Mr. Glover does here, the petitioner in *Cline* sought habeas corpus relief arguing the state of Ohio's failure to act waived any right to require him to fulfill his obligation under the original 1943 sentence. *Id*. The Ohio Supreme Court rejected any notion the state of Ohio had a duty to act to pursue petitioner, even if the state knew of his whereabouts. *Id*. Specifically, the Court stated:
>
>> [W]here a paroled convict violates his parole, there is no affirmative duty upon the state to place detainers on him or pursue him so as to return him to custody, and the state by its inaction creates neither an estoppel nor a waiver of its right to exact the penalty imposed under the conviction when it once again takes him into custody. (Citations omitted.)
>
> (Emphasis added.) *Id*.
>
> {¶18} Under *Cline*, we conclude Mr. Glover was not denied due process when the state of Ohio did not issue a detainer prior to 2006. The OAPA had no affirmative

> duty to place a detainer upon him because the burden was on Mr. Glover to serve his sentence. *See Cline* at 441. For these reasons, we find no due process violation occurred when the OAPA waited until 2006 to issue a detainer to Georgia's Department of Corrections.
>
> (ECF No. 7-1, Exhibit 13).

Applying AEDPA deference, the Fifth Appellate District's decision was not contrary to or an unreasonable application of clearly established law. Mr. Glover does not cite any United States Supreme Court cases holding that a petitioner's due process rights are violated when a state allegedly delays in issuing a detainer. Nor does he cite any cases for the proposition that a state has an affirmative duty to place a detainer on a parole violator. Mr. Glover's inability to identify clearly established law that the Fifth Appellate District's holding allegedly contravened is fatal to his claim, *see White*, 572 U.S. at 419, and I alternatively recommend that the Court deny his first ground for relief on the merits.

***2. Timeliness of Revocation Hearing***

In his second ground for relief, Mr. Glover argues that his due process rights were violated because the Ohio Adult Parole Authority failed to hold a timely revocation hearing and then purportedly added more than 8,000 days to his sentence. The Warden argues that Mr. Glover's claim is not cognizable to the extent it is based on alleged violations of state law and that he has not established a due process violation. I agree.

As noted above, federal habeas corpus relief is not available for errors of state law. *See Estelle*, 502 U.S. at 67. Rather, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). Thus, to the extent Mr. Glover argues that the Ohio Adult Parole Authority failed to follow state law policies, procedures, or rules regarding parole revocation, or that its purported decision to add more than 8,000 days to his sentence violated

Ohio law, I recommend that the Court dismiss Mr. Glover's claim as noncognizable. *See Foster v. Foley*, No. 1:23-cv-00139, 2023 WL 12046534, at *8 (N.D. Ohio Dec. 27, 2023), *report and recommendation adopted sub nom.*, 2025 WL 586245 (N.D. Ohio Feb. 24, 2025) (holding that claim was noncognizable where it was "based entirely on the application of state policies and procedures created by and applicable only to Ohio parolees"); *Stanley v. Miller*, No. 5:15CV1576, 2016 WL 10935407, at *10 (N.D. Ohio Feb. 22, 2016), *report and recommendation adopted*, 2018 WL 973921 (N.D. Ohio Feb. 20, 2018) ("Such challenges to errors in Ohio's interpretation of its own laws or procedures concerning parole, or violations of state law, procedures or rules concerning parole, are not cognizable in federal habeas corpus review.").

Mr. Glover's claim also fails to the extent he asserts a federal due process violation. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*., 442 U.S. 1, 7 (1979). In *Morrissey v. Brewer*, 408 U.S. 471 (1972), however, the Supreme Court held that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often others." *Id*. at 482. That liberty "is valuable and must be seen as within the protection of the Fourteenth Amendment." *Id*. Its termination "calls for some orderly process, however informal." *Id*. In particular, due process requires: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as

a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 489. The hearing must occur within a reasonable time, but "[a] lapse of two months . . . would not appear to be unreasonable." *Id.* at 488.

Mr. Glover argues that the State failed to hold a timely hearing before revoking his parole. As with his first ground for relief, Mr. Glover's argument appears to be premised on the notion that the State was required to hold a revocation hearing while he was incarcerated in Georgia. However, the Court has "established execution of the [parole violator] warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation." *Moody v. Daggett*, 429 U.S. 78, 87 (1976). Thus, Mr. Glover was not entitled to a hearing under *Morrissey* until he was released from custody in Georgia and the Ohio authorities took him into custody. *See Stanley*, 2016 WL 10935407, at *11 (holding that *Morrissey* due process requirements did not attach until petitioner was released from custody in another state and taken back into custody of the State of Ohio); *Boyd v. Recktenwald*, No. 2:17-CV-13489, 2018 WL 1570279, at *2 (E.D. Mich. Mar. 30, 2018) (holding that right to timely hearing under *Morrissey* does not accrue until state authorities take prisoner into custody).

The Ohio Adult Parole Authority issued an Order of Hold for Mr. Glover on March 15, 2019 and held a revocation hearing on April 10, 2019. (ECF No. 7-1, Exhibit 9, PageID # 195-97). Given *Morrissey*'s statement that a lapse of two months appears reasonable, the Fifth Appellate District did not act contrary to or unreasonably apply clearly established law when it held that this brief delay did not violate Mr. Glover's due process rights. (ECF No. 7-1, Exhibit 13, ¶ 23). Moreover, Mr. Glover does not allege that the procedures used in the

revocation hearing failed to comply with *Morrissey*. Mr. Glover's federal due process claim is without merit, and I alternatively recommend that the Court deny his second ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C.

§ 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Glover has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Glover's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated: October 30, 2026

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The

> District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).